

JONES LAW FIRM                    P.O. Box 44188 Madison, WI 53744-4188

Attorney William Richard Jones         (ph) 608·628·0598     (fax) 608·514·9003            bill@billjoneslawfirm.com

June 26, 2018

Via Electronic Filing
Honorable Willam Conley
US District Ct. Western Dist.
P.O. Box 591
Madison, WI 53701-0591

        Re:   U.S. v. David Tjader
                  17-CR-100

Dear Judge Conley:

    I am writing in anticipation of Mr. Tjader's sentencing hearing scheduled for July 2, 2018 at 1:00 p.m..

### The Guideline recommendation is not a helpful resource

    Nearly all the enhancements in § 2G2.2 do little to differentiate among the wide range of child pornography offenders. The section 2G2.2 enhancers describe the heartland of child pornography cases in the 21st century yet skyrockets nearly every violator's recommended period of incarceration. Once a person gives into a curiosity in these images and decides to seek them out, the fact that a computer is used, for instance, gives little insight into the defendant's criminal thinking or mindset. Computers are everywhere and they take little effort to obtain or use. Also, the internet makes transfers of massive amounts of data almost instantaneous and as a result it is unreasonable to draw a conclusion about a defendant's psyche from the number of files found on a hard drive or from what the worst images found depict.

    Use of a Peer to Peer program or access to a web site leaves the end user with little control over the number of images, the scenes that are depicted or the age of the victims portrayed. Internet file sharing is essentially an all-or-nothing flood gate of information. In1988, a defendant possessing a shoebox with 10 photographs would, in fact, differentiate himself from a defendant possessing an album containing 100 photographs. In today's information age, however, it takes no more effort to amass 10 images as it does to amass 1000. The number of images found, or even the content of some that are found among the masses, can't be said to reliably describe the individual's extent of interest in the subject matter nor does it predict the length of prison time that is reasonable but not necessary to rehabilitate or justly punish him. Analysis of the 2G2.2 factors gives little insight into the defendant beyond, obviously, that he has a deviant sexual interest. How ingrained

that interest is, or how difficult it will be to subdue, cannot be determined by piling on the ambiguities found in the guideline calculation for these offenders. Section 2G2.2 invariably concentrates all offenders into the top half of the statutory range and thereby makes essentially the same sentencing recommendation on a wide range of dissimilarly situated defendants. A guideline that, in nearly all cases, recommends a sentence that is at least 10 years for a violation of a statute authorizing a sentence as low as 5 years of incarceration cannot be fairly said to be a healthy analysis of the statutory requirements of 18 USC § 3553 and therefore the recommended guideline range should be given little weight.

### Character of the Defendant and Just Punishment

Mr. Tjader is a meek, 44 year old individual who has lived with his mother for his entire life. He is self-described as having a learning disability while his mother, more directly, describes him as low IQ and a slow learner. PSR ¶ 70. When considering the extent of time that is reasonable but not more than necessary to meet the goals of 18 USC 3553 it is worth considering how ill-equipped Mr. Tjader is to deal with the day-to-day life in a federal prison's general population. According to the Seventh Circuit, this is a significant sentencing factor because:

> A prison term would mean more to [a person being incarcerated for the first time] than to a defendant who previously had been imprisoned. Consideration of this factor is consistent with § 3553's directive that the sentence reflect the need for "just punishment," and "adequate deterrence"

*U.S. v. Baker* 445 F.3d 987, 992 (7th Cir. 2006).

As his objections to the PSR point out more thoroughly, Mr. Tjader told law enforcement that he was entertained by making shocking comments in an online chat setting and receiving a reaction. The PSR points out that there are endless chats between Mr. Tjader and prettycharlene (approximately 2,000). A February 12, 2018 motion for bail review in this case (Doc. 11) identifies in excess of 4,500 messages from Santos (believed to also be prettycharlene) to Tjader, many of them persistent and badgering messages requesting money for a myriad of reasons such as a need for a computer, hospital bills and in the end a desperate plea to help pay back a loan. The messages are often times sent one after another until a response is obtained from david_tader. The character of these communications suggest that the reason Mr. Tjader was engaged in the chats was not to so much to obtain images but rather it was to obtain a reaction to his inquiries, each inquiry designed to be more shocking than the one before it. The government will undoubtedly assert that such behavior created an environment for someone to act on these outrageous comments, which is true, but whether it was Mr. Tjader's intent to do so and whether he had a reasonable expectation that his inquiries would actually be acted upon should be a relevant inquiry when deciding sentence. Obviously Mr. Tjader must be taught to recognize that any request for action, even those requests so shocking that it would be nearly impossible or nonsensical to carry out, carries with

it a chance that someone could act on the inquiry. The question is whether or not more than 60 months in prison is necessary to get that message across to Mr. Tjader before he embarks on aggressive counseling that will undoubtedly be part of his supervised release. More than 5 years in prison is not necessary to deter him from venturing into the chat rooms again.

    Mr. Tjader has held the same job for 10 years at a Goodwill Center and, as the PSR points out, the Human Resources Manager provided the following statement: "[The] employee was very reliable and performed his duties well. [He] was employed full-time at 40 hours per week."  I recently filed support letters from his mother and Aunt. They speak to his kind, gentle and courteous demeanor.

### Request for Placement

    Mr. Tjader requests that the court make a recommendation to the Bureau Prisons that he be placed in a minimal security facility that provides treatment for correcting the thought process that lead him to communicate with unknown individuals over Yahoo Messenger in the way that he did which lead him to receiving illegal images of minors.  Among those facilities that are able to provide such treatment, he requests that the court recommend that be placed in the facility that is closest to his family near Superior, WI.

    Sincerely,
JONES LAW FIRM
/s
William R. Jones

cc:  AUSA Elizabeth Altman (via electronic filing)
     Clerk of Court, Western District of Wisconsin (via electronic filing)