IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

v().

DAVID TJADER,

Defendant.

Case No.: 17-cr-00100-wmc

---

GOVERNMENT'S SENTENCING MEMORANDUM

---

I.  Introduction

David Tjader has been looking at child pornography consistently for more than fifteen years. While it appears he may have taken a few breaks during that time period, he always resumed his criminal activity. He was finally caught in 2017 and has now been convicted of receiving child pornography. The defendant's guideline range for this offense is 97-121 months.[1] For the reasons below, the government requests this Court sentence the defendant within the advisory guideline range.

II.  Sentencing Argument

Sentencing in Federal Courts is guided by 18 U.S.C. § 3553. Section 3553 directs this Court to focus on who the defendant is and what the defendant did (Section 3553(a)

---

[1] The government recognizes that this Court generally declines to increase the guidelines by two levels for use of a computer. The government believes that enhancement should apply in this case because, as described below, the defendant used his computer to communicate one-on-one with people in the Philippines and didn't simply use his computer to search the Internet and store images.

(1)), and to address various societal goals in sentencing (Section 3553 (a) (2-7)). A brief analysis of these components supports a guideline sentence.

    A.    Nature and Circumstances of the Offense

18 U.S.C. § 3553(a) (1) directs the Court to consider the nature and circumstances of the offense – what did the defendant do? The defendant's actions support a guideline sentence.

In 2014, the Federal Bureau of Investigation began investigating people in the United States who were paying people in the Philippines to transmit live sexual activity involving children. (R. 25, ¶9). One of the seller accounts belonged to "Pretty Charlene." (Id., ¶ 11). Through this account, FBI agents determined the defendant was using his Yahoo! Messenger account to negotiate the sale of, and receive, child pornography. (Id., ¶ 12).

Agents found approximately 2000 Yahoo! Messages between the defendant and "Pretty Charlene" over the course of two and a half years. (R. 25, ¶ 12). During these conversations, the defendant requested videos and images of children ranging from newborns to age 13, referenced torturing little girls, and talked about raping and killing girls.[2]

For example, according to the search warrant in this case, the following conversation occurred on May 30, 2012:

    david_tjader:  will u have sex with a 6 yo girl
    prettycharlene28:  yes i do
    prettycharlene28:  baby

---

[2] The government found no evidence showing the specific requested acts occurred. However, there was evidence that "live shows" occurred and we have no way to know the content of those shows.

>david_tjader:  yes
>prettycharlene28: u not answer my message
>prettycharlene28:  :((:((
>david_tjader:  im trying to make a deal
>david_tjader:  30 each
>prettycharlene28: with who?
>david_tjader: wrong send
>prettycharlene28:  ?????
>david_tjader: ur friend
>prettycharlene28: u always wrong send . im jealous
>david_tjader: the deal was for the 6 yo to have sex
>prettycharlene28: ok/
>prettycharlene28: how much for that ?
>david_tjader: 30 for her
>prettycharlene28: and what about for me ?
>david_tjader: 30 u to
>prettycharlene28: ok.
>david_tjader:  i send saturday after show

The following chat took place on July 3, 2012:

>david_tjader: hi
>david_tjader:  i miss u
>david_tjader:  can u e-mail a pic of a young girl having sex with a dog

The following chat took place on July 12, 2012:

>david_tjader:  can u find me a videio of a young girl being tortuued girl must be under 10
>david_tjader:  can u find me a videio of a young girl geting fucked by a dog

The following chat took place on November 30, 2012:

>david_tjader:  can u send me pics
>prettycharlene28:  picture of my baby ?
>prettycharlene28:  pic of my baby ?
>david_tjader:  kiddy porn
>prettycharlene28:  im back here
>prettycharlene28:  what pic u like?
>……….
>david_tjader:  kiddy porn
>prettycharlene28:  okie
>prettycharlene28:  what about your promise to me ?

3

>prettycharlene28:  give me your email i send there
>david_tjader:  do u have any ware young girl is being tortured
>prettycharlene28:  :((
>prettycharlene28:  i will look
>david_tjader:  dxxxxx@cheqnet.net
>prettycharlene28:  oki
>prettycharlene28:  i send to ur email...

The following chat took place on May 30, 2013:

>david_tjader:  would u burn a little girls pussy with a cig
>prettycharlene28:  i will try but im not sure .. if i can get young girl tommorow cos im broke too
>david_tjader:  im not ask for tomorrow
>prettycharlene28:  okie
>prettycharlene28:  but tommorow isa for smoking pussy from me right ?
>david_tjader:  yes
>prettycharlene28: okie same time tommorow oki?
>david_tjader:  do u know any young u can do that to
>prettycharlene28:  i will look fdor u
>prettycharlene28:  i look for u oki?
>david_tjader:  ok
>david_tjader:  bye

The defendant claims these messages were merely to "shock" the recipient. Even if that were true, the messages continually encouraged horrific sexual and physical abuse. Further, "Pretty Charlene" did not know the defendant's intent. "Pretty Charlene" wanted to continue receiving money from the defendant. We can't know how far she would have gone in satisfying the defendant's requests, whether they were for shock value or not. By making the requests and sending the money, the defendant was encouraging this abuse to occur. Moreover, the images found on the defendant's computers, including bondage, physical abuse of children, and bestiality (R. 25, ¶21) coincide with what was he was asking "Pretty Charlene" to send him. That shows the

4

requests were not merely for shock value but were actually what the defendant was interested in and wanted to receive from "Pretty Charlene."

At some point after 2013, it appears the defendant cut off contact with "Pretty Charlene." However, when "Pretty Charlene" reached back out to the defendant in 2017, he reengaged with her. From May 2017 to June 2017, the defendant corresponded with "Santos Mc Brigette" whom he believed was the same person as "Pretty Charlene." (R. 25, ¶ 23). In addition to asking for naked pictures of young children, the defendant asked "Santos Mc Brigette" how much it would cost to kill a child. (R. 25, ¶ 18). Even assuming the defendant was not serious in his request, "Santos Mc Brigette" would have no way of knowing that, particularly when the defendant continued to send money through Western Union. (R. 25, ¶ 17).

Western Union records showed that the defendant sent money to people tied to accounts the FBI knew to be associated with child exploitation 119 times. So while this is the defendant's first conviction, the idea that this is the defendant's first offense is a complete fallacy. It may be the first time Tjader has been caught and prosecuted, but he has committed the crime many times over many years.

Additionally, the Philippines was not the only source of the defendant's child pornography images. Agents found several peer-to-peer programs installed on the defendant's phone and computers. (R. 25, ¶ 19). They also found the search terms "child abuse," "PTHC," "kiddy porn," and "12 yo girl nude."

The defendant's conduct was extremely serious and his argument attacking the validity and applicability of the child pornography trafficking guidelines do not justify a below-guideline sentence.

B.   History and Characteristics of the Defendant

The defendant had a "normal" childhood. He has no criminal history points and has been consistently employed; however, as this Court is aware, many child sexual offenders come before this Court with spotless records and good work histories before they were discovered to have been involved in these types of offenses.

C.   The Need for the Sentence to Reflect the Seriousness of the Offense,
     to Promote Respect for the Law, and to Provide Just Punishment

Section 3553 directs the Court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in the subsection." Included in those factors are the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, and to protect the public from further crimes of the defendant.

The seriousness of this offense is difficult to overstate. Traders of child pornography are members of a community of deviant individuals who revel in watching the sexual abuse of young and vulnerable children. For those with a sexual interest in children, the Internet provides a tailor-made medium for acquiring the latest and most hardcore child pornography images. The fact that the children suffer the sexual abuse in the first place is a horrible reality, but add to that the continued

exploitation of such children by persons like the defendant and it becomes a never-ending tragedy.

    D.    The Need to Afford Adequate Deterrence to Criminal Conduct and Protect the Public from Further Crimes of the Defendant

The sentence in this case should constitute a loud message to other offenders that serious consequences will result for such callous disregard of minor victims. Although he has no criminal history (like the many of child pornography defendants who have previously come before this Court), the defendant may well pose a future danger to his young victims, as demonstrated by his repeated and varied illegal acts that exploited the most vulnerable segment of our societies over a long period of time.

### III.    CONCLUSION

David Tjader has been interested in child pornography much of his adult life. The government respectfully believes that a guideline sentence, followed by a lengthy term of supervised release, is warranted in this case.

Dated: June 28, 2018

Respectfully submitted,

SCOTT C. BLADER
United States Attorney

By:    /s/
ELIZABETH ALTMAN
Assistant United States Attorney